## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALHIX OYOQUE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| DEPAUL UNIVERSITY and BOARD OF TRUSTEES OF DEPAUL UNIVERSITY, | ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Alhix Oyoque ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants DePaul University and the Board of Trustees of DePaul University ("DePaul" or "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of all people who paid tuition and fees for the Winter and Spring 2020 academic quarters at DePaul or the Spring 2020 academic semester at DePaul's School of Law (collectively, the "Spring 2020 Term"), and who, because of Defendants' response to the novel Coronavirus ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services or which their fees were paid, without having their tuition and fees refunded to them.

2.      DePaul is a private, Roman Catholic university with a total enrollment of over 22,000 undergraduate and graduate students across ten colleges and schools, making it the largest Catholic university in the United States.[1]  DePaul offers over 130 undergraduate majors and 175 graduate degree programs.[2]  DePaul also operates an online degree program, which offers undergraduate and graduate-level degrees.[3]  All DePaul schools and colleges operate on a quarter system, with the exception of the School of Law, which operates on a semester system.

3.      On March 11, 2020, Defendants, via DePaul President A. Gabriel Esteban, Ph.D., announced that, because of the global COVID-19 pandemic, effective immediately, DePaul would suspend all in-person final exams for the Winter 2020 Quarter, cancel or postpone all University-sponsored events, and, "[w]henever possible," deliver all classes remotely for the entirety of the Spring 2020 Quarter and, for students of DePaul's School of Law, the remainder of the Spring 2020 Semester.[4]

4.      Thus, DePaul has not held any in-person classes since March 11, 2020, prior to the end of the Winter 2020 Quarter.  For the remainder of the Winter 2020 Quarter and the entirety of the Spring 2020 Quarter, classes that continued were only offered in an online format, with no in-person instruction.

5.      As a result of the closure of Defendants' facilities, Defendants have not delivered the educational services, facilities, access and/or opportunities for which Plaintiff and the

---

[1] DePaul enrolls around 14,500 undergraduates and about 7,930 graduate students.  *See* https://www.depaul.edu/about/Pages/default.aspx (last accessed June 9, 2020).

[2] https://www.depaul.edu/academics/Pages/default.aspx (last accessed June 9, 2020).

[3] https://www.depaul.edu/academics/online-learning/Pages/default.aspx (last accessed June 9, 2020).

[4] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/03-11-2020-all-university.aspx (last accessed June 9, 2020); *see also* https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-13-2020-student.aspx (last accessed June 9, 2020) ("Students should plan on all Spring Quarter courses moving online.").

putative Class contracted and paid. The online learning options being offered to DePaul students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. The remote learning options are in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for.

6.     Indeed, as DePaul Interim Provost Salma Ghanem acknowledged in a "message to students with Spring course information" dated March 23, 2020, the "shift to remote delivery of courses certainly is an abrupt change from the usual way DePaul operates"[5] Further, recognizing that "remote instruction is a far different experience than the classroom instruction to which students are accustomed[,]" Interim Provost Ghanem warned students to "keep in mind that interactions with your class may happen in different ways."[6] President Esteban echoed that sentiment in an announcement dated March 30, 2020, in which he acknowledged the "concerns [students have] brought to [Defendants'] attention" and, in particular, that "the decisions [Defendants] had to make carried a heavy weight of disappointment, especially for [DePaul] students [like Ms. Oyoque] who will be graduating soon."[7]

7.     Yet, notwithstanding this recognition, Defendants have not refunded any tuition or fees for the Spring 2020 Term.[8]

---

[5] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-23-20-provost-message.aspx (last accessed June 9, 2020).

[6] *Id.*

[7] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-30-20-President-Update.aspx (last accessed June 9, 2020).

[8] https://resources.depaul.edu/coronavirus-covid-19-updates/faqs/Pages/classes-academics-students.aspx (last accessed June 9, 2020) ("Will DePaul reduce tuition for Spring Quarter? (Added 3/20/20)  * Tuition for Spring Quarter remains the same."); *see also* https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-13-2020-student.aspx (last accessed June 9, 2020) (noting that although "[s]tudents should plan on all

8.      Plaintiff and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendants have not provided.  Even if Defendants did not have a choice in cancelling in-person classes, they nevertheless have improperly retained funds for services they are not providing.

9.      Plaintiff seeks, for herself and Class members, Defendants' disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Term when classes moved online and campus services ceased being provided. Plaintiff seeks a return of these amounts on behalf of herself and the Class as defined below.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

11.      This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in this District, and the acts and transactions giving rise to this action occurred in this District.

12.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendants' principal place of business is located in this District, Plaintiff resides in this District, and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

---

Spring Quarter courses moving online[,] … [t]uition for Spring Quarter remains the same and is due on March 20.").

## PARTIES

13.     Plaintiff Alhix Oyoque is a citizen of Illinois who resides in Cicero, Illinois. During the Spring 2020 Quarter, Ms. Oyoque was an undergraduate student at DePaul pursuing a bachelor's degree in Health Science.  Ms. Oyoque is currently an alumnus of DePaul, having completed her undergraduate degree requirements and graduated at the end of the Spring 2020 Quarter.  In-person classes are critical to Ms. Oyoque's field of study, as it requires in-person instruction, feedback, and a high level of collaboration, which is made more feasible through in-class instruction.  Ms. Oyoque paid approximately $3,800 in tuition to Defendants for the Spring 2020 Quarter.  Ms. Oyoque has not been provided a refund of any tuition monies paid, despite the fact that in-person classes have not been held since March 11, 2020.

14.     Defendant DePaul University is a private university organized under the Illinois General Not for Profit Corporation Act, 805 ILCS 105, *et seq*., with its principal place of business at 1 E. Jackson Blvd., Chicago, Illinois 60604.

15.     Defendant DePaul University is governed by Defendant Board of Trustees of DePaul University.  The Board has approximately 35 voting members. The Board's principal place of business is in Chicago, Illinois.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Plaintiff And Class Members Paid Tuition And Fees For The Spring 2020 Term*

16.     Plaintiff and Class members are individuals who paid the cost of tuition and other mandatory fees for the Winter and Spring 2020 Quarters at DePaul or the Spring 2020 Semester at DePaul's School of Law (collectively, the "Spring 2020 Term").

17.     All undergraduate and graduate degree programs at DePaul operate based on a four-term academic year,[9] with the exception of the School of Law, which operates based on a two-term semester schedule.  Winter 2020 Quarter classes at DePaul began on January 4, 2020, and classes and final exams for the quarter were scheduled to end on or around March 20, 2020. Spring 2020 Quarter classes at DePaul began on March 28, 2020, and classes and final exams for the quarter were scheduled to end on or around June 12, 2020.[10]  Spring 2020 Semester classes at DePaul's School of Law began on or about January 13, 2020, and classes and final exams for the semester were scheduled to end on or around May 14, 2020.[11]

18.     Plaintiff and Class members paid the cost of tuition for the Spring 2020 Term at DePaul, as well as associated fees and costs.

19.     Undergraduate tuition for the Winter and Spring 2020 Quarters at DePaul varies based on the student's degree program and date of enrollment.  For instance, DePaul's Colleges of Communication, Education, and Arts & Sciences each charge $13,160 per quarter for undergraduate students who enrolled in 2016 (or $26,320 for the Winter and Spring 2020 Quarters, cumulatively), and $13,517 per quarter for undergraduate students who enrolled in 2019 (or $27,034 for the Winter and Spring 2020 Quarters, cumulatively).  Along the same spectrum, the School of Music and the Theatre School charge from $12,727 to $13,938 per quarter (or $25,454 to $27,876 for the Winter and Spring 2020 Quarters, cumulatively).[12]

20.     The approximate costs of full-time graduate tuition and fees for the Winter and Spring 2020 Quarters at DePaul, cumulatively, are $28,666 for a Doctorate in Business

---

[9] Defendants' website refers to each term as an academic "quarter."

[10] https://academics.depaul.edu/calendar/Pages/default.aspx (last accessed June 9, 2020).

[11] https://academics.depaul.edu/calendar/Pages/law-calendar.aspx (last accessed June 9, 2020).

[12] https://offices.depaul.edu/student-financial-accounts/cost-of-attendance/tuition/Pages/Tuition-Rates-2019-2020.aspx (last accessed June 9, 2020).

Administration, and range from $22,954 to $24,356 for a graduate degree from the Theatre School (depending on date of enrollment). The approximate costs of full-time graduate tuition and fees for the Spring 2020 Semester at DePaul's College of Law range from $23,390 to $24,335 (depending on date of enrollment).[13]

21.     The tuition and fees described above are provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

***In Response To COVID-19, DePaul Closed Campuses And Cancelled All In-Person Classes***

22.     On March 11, 2020, DePaul President Esteban announced that, because of the global COVID-19 pandemic, effective immediately, all in-person classes would be suspended through the remainder of the Winter 2020 Quarter. President Esteban further noted that, in lieu of in-person instruction, all classes at DePaul would be held in online/remote format through the entirety of the Spring 2020 Quarter, and, for students of DePaul's School of Law, for the remainder of Spring 2020 Semester.

23.     As a result of the closure of Defendants' facilities, Defendants have not delivered the educational services, facilities, access and/or opportunities that Plaintiff and members of the Class contracted and paid for. Plaintiff and the Class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendants have not provided. Even if Defendants claim they did not have a choice in cancelling in-person classes, they nevertheless have improperly retained funds for services it is not providing.

24.     Plaintiff and the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendants' institution and enroll on an in-person basis.

---

[13] *Id.*

25.     Defendants market the DePaul on-campus experience as a benefit of enrollment on DePaul's website:[14]





Housing

Living on campus puts you at the center of everything.

Learn more about housing

## Living On Campus

Living on campus is an important aspect of college education. Residence halls are more than just rooms or places to study and sleep. They are places where students develop meaningful friendships, explore new ideas and get involved with the university community. Living in on-campus housing provides the opportunity to learn how to balance the academic and social aspects of life at DePaul University.

---

[14] *See, e.g.*, https://www.depaul.edu/student-life/Pages/default.aspx (last accessed June 9, 2020); https://offices.depaul.edu/student-affairs/student-life/living-on-campus/Pages/default.aspx (last accessed June 9, 2020).

26.     The online learning options being offered to DePaul students are subpar in practically every aspect and a shadow of what they once were, from the lack of facilities, materials, and access to faculty.   Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  Moreover, office hours for professors are essentially non-existent given that professors are unable to see their students to provide in-person assistance.   Email is simply no substitute for instances where additional teaching is required.

27.     The remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for.  The remote education being provided is not even remotely worth the amount charged Class members in tuition for the Spring 2020 Term at DePaul.  The tuition and fees for in-person instruction at DePaul are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation; and

- Networking and mentorship opportunities.

28.     Through this lawsuit Plaintiff seeks, individually and on behalf of the Class, Defendants' disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Term at DePaul, when classes moved online and campus services ceased being provided.  Plaintiff seeks return of these amounts on behalf of herself and the Class as defined below.

## CLASS ALLEGATIONS

29.     Plaintiff seeks to represent a class defined as all people who paid Defendants' Spring 2020 Term tuition and/or fees for in-person educational services that DePaul failed to provide, and whose tuition and fees have not been refunded (the "Class").  Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

30.     Plaintiff also seeks to represent a subclass consisting of Class members who reside in Illinois (the "Subclass").

31.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

32.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class

members is unknown to Plaintiff, the true number of Class members is known by Defendants and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

33. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendants accepted money from Class and Subclass members in exchange for the promise to provide services;

(b) whether Defendants have provided the services for which Class and Subclass members contracted;

(c) whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendants did not provide.

(d) whether Defendants have unlawfully converted money from Plaintiff, the Class and Subclass; and

(e) whether Defendants are liable to Plaintiff, the Class, and Subclass for unjust enrichment.

34. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein. Further, there are no defenses available to Defendants that are unique to Plaintiff.

35.     **Adequacy of Representation.**   Plaintiff will fairly and adequately protect the interests of the Class and Subclass.   Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.   Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

36.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.   It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.   Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.   By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

37.     In the alternative, the Class and Subclass may also be certified because:

        (a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

**FIRST CLAIM FOR RELIEF**
**Breach Of Contract**
**(On Behalf Of The Class And Subclass)**

38.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

39.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

40.     Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class and Subclass entered into a binding contract with Defendants.

41.     As part of the contract, and in exchange for the aforementioned consideration, Defendants promised to provide certain services, all as set forth above.  Plaintiff, Class, and Subclass members fulfilled their end of the bargain when they paid tuition monies due for the Spring 2020 Term at DePaul.  Tuition for the Spring 2020 Term was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring 2020 Term.

42.     Defendants have failed to provide the contracted for services and have otherwise not performed under the contract as set forth above. Defendants have retained monies paid by Plaintiff and the Class for their Spring 2020 Term tuition and fees, without providing them the benefit of their bargain.

43.     Plaintiff and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendants' breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

44.     As a direct and proximate result of Defendants' breach, Plaintiff, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendants for services that Defendants have failed to deliver. Defendants should return the pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down on March 11, 2020.

45.     Defendants' performance under the contract is not excused due to COVID-19. Indeed, Defendants should have refunded the pro-rated portion of any education services not provided. Even if performance was excused or impossible, Defendants would nevertheless be required to return the funds received for services they will not provide.

### SECOND CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf Of The Class And Subclass)**

46.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

48.     Plaintiff and members of the Class and Subclass conferred a benefit on Defendants in the form of monies paid for Spring 2020 Term tuition and other fees in exchange for certain service and promises.  Tuition for Spring 2020 Term was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Term.

49.     Defendants voluntarily accepted and retained this benefit by accepting payment.

50.     Defendants have retained this benefit, even though Defendants have failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendants' retention unjust under the circumstances.  Accordingly, Defendants should return the pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down on March 11, 2020.

51.     It would be unjust and inequitable for Defendants to retain the benefit, and Defendants should be required to disgorge this unjust enrichment.

### THIRD CLAIM FOR RELIEF
**Conversion**
**(On Behalf Of The Class And Subclass)**

52.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

53.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendants.

54.     Plaintiff and members of the Class and Subclass have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring 2020 Term tuition and fee payments to Defendants.

55.     Defendants intentionally interfered with the rights of Plaintiff, the Class, and the Subclass when they moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

56.     Plaintiff and members of the Class and Subclass demand the return of the pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down on March 11, 2020.

57.     Defendants' retention of the fees paid by Plaintiff and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiff and members of the Class and Subclass of the benefits for which the tuition and fees paid.

58.     This interference with the services for which Plaintiff and members of the Class and Subclass paid damaged Plaintiff and Class members in that they paid tuition and fees for services that will not be provided.

59.     Plaintiff and members of the Class and Subclass are entitled to the return of pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down on March 11, 2020.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

(a) For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class and Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

(b) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

Dated: June 11, 2020

Respectfully submitted,

By: _/s/ Carl V. Malmstrom_
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

L. Timothy Fisher (*pro hac vice* app. forthcoming)
Neal J. Deckant (*pro hac vice* app. forthcoming)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel.: (925) 300-4455

Fax: (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com

Sarah N. Westcot (*pro hac vice* app. forthcoming)
**BURSOR & FISHER, P.A.**
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Tel.: (305) 330-5512
Fax: (305) 676-9006
swestcot@bursor.com

*Attorneys for Plaintif and the Putative Classf*