**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALHIX OYOQUE, ENRIQUE CHAVEZ, and EMMA SHEIKH, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:20-cv-3431 |
| | ) | Judge: Matthew Kennelly |
| Plaintiffs, | ) | Magistrate: M. David Weisman |
| | ) | |
| v. | ) | |
| | ) | |
| DEPAUL UNIVERSITY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Alhix Oyoque, Enrique Chavez, and Emma Sheikh ("Plaintiffs"), individually and on behalf of all other similarly situated students, bring this class action complaint against DePaul University ("DePaul" or "Defendant"). Plaintiffs make the following allegations upon personal knowledge as to their own acts, and upon information and belief and their attorneys' investigation as to all other matters.

**NATURE OF THE ACTION**

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for on-campus instruction during the Winter and Spring 2020 academic quarters at DePaul or the Spring 2020 academic semester at DePaul's School of Law (collectively, the "Spring 2020 Term"), and/or any subsequent term or semester, and who, because of Defendant's response to the novel Coronavirus ("COVID-19") pandemic, lost the benefit of the education and services for which they paid, without having their tuition and fees refunded to them.

2. DePaul is a private, Roman Catholic university with a total enrollment of over 22,000 undergraduate and graduate students across ten colleges and schools, making it the largest Catholic university[1] and the thirteenth largest private university in the United States.[2]

3. Located in Chicago, DePaul has two campuses: its flagship Lincoln Park Campus and "the Loop" Campus. DePaul offers over 130 undergraduate majors and 175 graduate degree programs.[3] DePaul also operates an online degree program, which offers a limited number of undergraduate and graduate-level degrees.[4] All DePaul schools and colleges operate on a quarter system, with the exception of the School of Law, which operates on a semester system.

4. DePaul's budget for the 2019-20 academic year was $568 million.[5] As of 2019, DePaul had a $696.5 million endowment.[6]

5. Plaintiffs and Defendant entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the contractual agreement were set forth in publications from DePaul, including in the DePaul Academic Catalog (the "Academic Catalog").

6. The Academic Catalog is directed at students, including Plaintiffs and Class Members.

---

[1] DePaul enrolls around 14,500 undergraduates and about 7,930 graduate students. *See* https://www.depaul.edu/about/Pages/default.aspx (last accessed August 4, 2020).

[2] https://offices.depaul.edu/university-marketing-communications/facts-stats/Pages/about-depaul.aspx (last accessed August 4, 2020).

[3] https://www.depaul.edu/academics/Pages/default.aspx (last accessed August 4, 2020).

[4] https://www.depaul.edu/academics/online-learning/Pages/default.aspx (last accessed August 4, 2020).

[5] https://offices.depaul.edu/university-marketing-communications/facts-stats/Pages/about-depaul.aspx (last accessed August 4, 2020).

[6] https://www.nacubo.org/-/media/Nacubo/Documents/EndowmentFiles/2019-Endowment-Market-Values--Final-Feb-10.ashx? (last accessed August 4, 2020).

7.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring 2020 Term, Plaintiffs and Class Members viewed the Academic Catalog to make specific course selections prior to registering and paying for selected courses.

8.     The Academic Catalog provided Plaintiffs and Class Members with information regarding the courses offered, the relevant department, credit hours, classroom activities, and the manner in which each course is to be held.

9.     On March 11, 2020, Defendant, via DePaul President A. Gabriel Esteban, Ph.D., announced that, because of the global COVID-19 pandemic, effective immediately, DePaul would suspend all in-person final exams for the Winter 2020 Quarter, cancel or postpone all University-sponsored events, and, "[w]henever possible," deliver all classes remotely for the entirety of the Spring 2020 Quarter and, for students of DePaul's School of Law, the remainder of the Spring 2020 Semester.[7]  DePaul later decided that all Summer 2020 courses would also be delivered exclusively online.[8]  In addition, for the 2020-21 academic year, DePaul has announced that "some classes will be held fully on-campus, [but] more classes than usual will continue to take place at least partially online."[9]

10.     Thus, DePaul has not held any in-person classes since March 11, 2020, prior to the end of the Winter 2020 Quarter.  For the remainder of the Winter 2020 Quarter and the

---

[7] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/03-11-2020-all-university.aspx (last accessed August 4, 2020); *see also* https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-13-2020-student.aspx (last accessed August 4, 2020) ("Students should plan on all Spring Quarter courses moving online.").

[8] https://resources.depaul.edu/summer-session/Pages/default.aspx (last accessed August 4, 2020).
[9] https://resources.depaul.edu/newsline/sections/campus-and-community/Pages/Plans-for-fall-quarter-reopening.aspx (last accessed August 4, 2020).

entirety of the Spring 2020 Quarter, classes that continued were only offered in an online format, with students having no access to in-person instruction, facilities, or resources.

11.     As a result of the closure of Defendant's campuses, Defendant has not delivered the educational services, facilities, access and/or opportunities for which Plaintiffs and the putative Class contracted and paid.  The online learning options being offered to DePaul students are subpar in practically every aspect, including the lack of facilities, materials, and access to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person education for which Plaintiffs and the putative Class members contracted and paid.

12.     Indeed, as DePaul Interim Provost Salma Ghanem acknowledged in a "message to students with Spring course information" dated March 23, 2020, the "shift to remote delivery of courses certainly is an abrupt change from the usual way DePaul operates"[10]  Further, recognizing that "remote instruction is a far different experience than the classroom instruction to which students are accustomed[,]" Interim Provost Ghanem warned students to "keep in mind that interactions with your class may happen in different ways."[11]  President Esteban echoed that sentiment in an announcement dated March 30, 2020, in which he acknowledged the "concerns [students have] brought to [Defendant's] attention" and, in particular, that "the decisions [Defendant] had to make carried a heavy weight of disappointment, especially for [DePaul] students who will be graduating soon."[12]

---

[10] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-23-20-provost-message.aspx (last accessed August 4, 2020).

[11] *Id.*

[12] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-30-20-President-Update.aspx (last accessed August 4, 2020).

13.    According to *Forbes*, DePaul University is expected to receive at least $14 million in relief from the federal government as part of the federal stimulus bill designed to ease the impact of COVID-19.[13]  This means that DePaul will receive the tenth-largest sum of federal aid among private, non-profit institutions.[14]

14.    Moreover, over 6,000 people signed an online petition at www.change.org that asked DePaul to decrease tuition for the Spring 2020 Quarter because "the educational services offered [for the Spring 2020 Quarter] are not equal to services rendered" in on-campus instruction.[15]

15.    Yet, despite acknowledging the "abrupt change" to students' education, receiving and influx of federal funds, and hearing the pleas of thousands of struggling students, Defendant refuses to refund any tuition or fees for the Spring 2020 Term.[16]

16.    Plaintiffs did not enter into an agreement with Defendants for online education, but rather sought to receive an in-person education from Defendant's institution.  Plaintiffs and the putative class are therefore entitled to a partial refund of tuition and fees for in-person educational services, facilities, access, and/or opportunities for which they paid and which Defendant has not provided to them.  Even if Defendant's decision to close campus and suspend

---

[13] https://www.forbes.com/sites/wesleywhistle/2020/04/10/the-colleges-getting-the-most-money-from-the-stimulus-bill/#68ffa5c93686 (last accessed August 4, 2020).

[14] https://depauliaonline.com/47960/news/depaul-to-receive-10th-largest-sum-of-aid-among-private-non-profit-institutions-from-care-act/ (last accessed August 4, 2020).

[15] https://www.change.org/p/depaul-university-lower-tuition-for-colleges-after-making-all-classes-online (last visited August 4, 2020).

[16] https://resources.depaul.edu/coronavirus-covid-19-updates/faqs/Pages/classes-academics-students.aspx (last accessed June 9, 2020) ("Will DePaul reduce tuition for Spring Quarter? (Added 3/20/20)  * Tuition for Spring Quarter remains the same."); *see also* https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-13-2020-student.aspx (last accessed August 4, 2020) (noting that although "[s]tudents should plan on all Spring Quarter courses moving online[,] … [t]uition for Spring Quarter remains the same and is due on March 20.").

in-person classes was proper, it is improper—and, indeed, unlawful—for Defendant to retain funds for services that it has not furnished.

17.     Plaintiffs thus seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Term when classes moved online and campus services ceased being provided.  Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

19.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District, and the acts and transactions giving rise to this action occurred in this District.

20.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant's principal place of business is located in this District, Plaintiffs reside in this District, and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## PARTIES

21.     Plaintiff Alhix Oyoque ("Plaintiff Oyoque") is a resident of Cicero, Illinois and a citizen of Illinois.  During the Spring 2020 Quarter, Plaintiff Oyoque was an undergraduate

student at DePaul pursuing a bachelor's degree in Health Science.  Plaintiff Oyoque is currently

an alumnus of DePaul, having completed her undergraduate degree requirements and graduated

at the end of the Spring 2020 Quarter.  In-person classes were critical to Plaintiff Oyoque's field

of study, as it required in-person instruction, feedback, and a high level of collaboration, which

was made feasible through in-class instruction.  Plaintiff Oyoque was billed $8,815.00 in tuition

by Defendant for the Spring 2020 Quarter, as well as the cost of DePaul's mandatory

undergraduate student fees, including a $27 Student Activity Fee, a $25 Athletic Fee, and a $105

public transit fee.  Plaintiff Oyoque has not been provided a refund of any tuition monies paid,

despite the fact that in-person classes have not been held since March 11, 2020.

22.     Plaintiff Enrique Chavez ("Plaintiff Chavez") is a resident of Chicago, Illinois and

a citizen of Illinois.  Plaintiff Chavez was a senior undergraduate student studying psychology at

DePaul University's Lincoln Park Campus and now an alumnus and graduate student at DePaul.

Plaintiff Chavez enrolled in classes and paid the required tuition and fees for the DePaul Spring

2020 Quarter: $13,160 in tuition, as well as the cost of DePaul's mandatory undergraduate

student fees, including a $27 Student Activity Fee, a $25 Athletic Fee, and a $105 public transit

fee.  Plaintiff Chavez received financial aid for a portion of these costs and took out student loans

and used personal funds to cover the remaining costs.  Plaintiff Chavez has neither received nor

been offered any refund or reimbursement for the tuition or fees that he paid, despite the fact that

in-person classes have not been held since March 11, 2020.

23.     Plaintiff Emma Sheikh ("Plaintiff Sheikh") is a resident of Chicago, Illinois and a

citizen of Illinois.  During the 2019-20 academic year, Plaintiff Sheikh was a first-year master's

degree student studying elementary education at DePaul's College of Education graduate

program at DePaul's Lincoln Park Campus.  Plaintiff Sheikh enrolled in classes and paid the

required tuition and fees for the DePaul University Spring 2020 Quarter. For the Spring 2020 Quarter, Plaintiff Sheikh paid $8,515 in tuition as well as DePaul's mandatory graduate student fees, including a $25 Athletic Fee and a $105 public transit fee. Plaintiff Sheikh paid for tuition and fees with her own funds and in part by taking out student loans. Plaintiff Sheikh has neither received nor been offered any refund or reimbursement for the tuition or fees that she has paid for the Spring 2020 Quarter at DePaul, despite the fact that in-person classes have not been held since March 11, 2020. Plaintiff Sheikh also enrolled in courses for DePaul's Summer Session 1, which began on June 15 and concluded on July 19, 2020.

24.     Defendant DePaul University is a private university organized under the Illinois General Not for Profit Corporation Act, 805 ILCS 105, *et seq*., with its principal place of business at 1 E. Jackson Blvd., Chicago, Illinois 60604.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Plaintiffs And Class Members Paid Tuition And Fees For On-Campus Courses*

25.     Plaintiffs and Class members are individuals who paid the cost of tuition and other mandatory fees for on-campus courses for the Winter and Spring 2020 Quarters at DePaul or the Spring 2020 Semester at DePaul's School of Law (collectively, the "Spring 2020 Term").

26.     All undergraduate and graduate degree programs at DePaul operate based on a four-term academic year,[17] with the exception of the School of Law, which operates based on a two-term semester schedule. Winter 2020 Quarter classes at DePaul began on January 4, 2020, and classes and final exams for the quarter were scheduled to end on or around March 20, 2020. Spring 2020 Quarter classes at DePaul began on March 28, 2020, and classes and final exams for

---

[17] Defendant's website refers to each term as an academic "quarter."

the quarter were scheduled to end on or around June 12, 2020.[18]  Spring 2020 Semester classes at

DePaul's School of Law began on or about January 13, 2020, and classes and final exams for the

semester were scheduled to end on or around May 14, 2020.[19]

27.     Plaintiffs and Class members paid the cost of tuition and associated fees and costs

for in-person instruction for the Spring 2020 Term at DePaul.

28.     Undergraduate tuition for the Winter and Spring 2020 Quarters at DePaul varied

based on the student's degree program and date of enrollment.  For instance, DePaul's Colleges

of Communication, Education, and Arts & Sciences each charged $13,160 per quarter for

undergraduate students who enrolled in 2016 (or $26,320 for the Winter and Spring 2020

Quarters, cumulatively), and $13,517 per quarter for undergraduate students who enrolled in

2019 (or $27,034 for the Winter and Spring 2020 Quarters, cumulatively).  Along the same

spectrum, the School of Music and the Theatre School charged from $12,727 to $13,938 per

quarter (or $25,454 to $27,876 for the Winter and Spring 2020 Quarters, cumulatively).[20]

29.     The approximate costs of full-time graduate tuition and fees for the Winter and

Spring 2020 Quarters at DePaul, cumulatively, was $28,666 for a Doctorate in Business

Administration, and range from $22,954 to $24,356 for a graduate degree from the Theatre

School (depending on date of enrollment).  The approximate costs of full-time graduate tuition

and fees for the Spring 2020 Semester at DePaul's College of Law ranged from $23,390 to

$24,335 (depending on date of enrollment).[21]  The tuition and fees described here are provided

---

[18] https://academics.depaul.edu/calendar/Pages/default.aspx (last accessed June 9, 2020).

[19] https://academics.depaul.edu/calendar/Pages/law-calendar.aspx (last accessed June 9, 2020).

[20] https://offices.depaul.edu/student-financial-accounts/cost-of-attendance/tuition/Pages/Tuition-Rates-2019-2020.aspx (last accessed June 9, 2020).

[21] *Id.*

by way of example; total damage amounts—which may include other fees that are not listed herein but that were not refunded—will be proven at trial.

30.     During the Spring 2020 Term, Plaintiffs and Class members paid costs like those detailed above in exchange for the unique, immersive, on-campus education that Defendant promised them.  That is, Plaintiffs and Class members did not choose to attend an online institution of higher learning, or another on-campus higher education institution.  Instead, they selected—and paid—DePaul specifically for its on-campus, in-person educational experience.

31.     Indeed, DePaul markets itself and justifies its high tuition cost by stressing the vitality of its on-campus "educational experience," which "weaves together mind, place, people and heart."[22]  In particular, DePaul stresses that the school's backdrop of Chicago is integral to students' education "At DePaul, your 'college town' is the entire city of Chicago — and it's all yours to explore."[23]  DePaul's website proclaims that, "Going to school at DePaul means living in Chicago (or very close if you're commuting).  And Chicago has endless opportunities to play and learn.  It's definitely big, but it's also known for Midwestern friendliness, a strong sense of community, and its ethnic diversity, food and culture."[24]

32.     Additionally, DePaul markets its hands-on approach to instruction.  As the DePaul admissions website boasts, "There are a million reasons you might apply to DePaul, but one is certain: here you'll learn by doing."[25]  For instance, graduate students are told that they will have the opportunity to "[l]everage the city of Chicago [and] build community

---

[22] https://www.depaul.edu/about/Pages/default.aspx (last accessed August 4, 2020).

[23] https://www.depaul.edu/about/campuses/Pages/default.aspx (last accessed August 4, 2020).

[24] https://www.depaul.edu/student-life/Pages/default.aspx (last accessed August 4, 2020).

[25] https://www.depaul.edu/admission-and-aid/Pages/default.aspx (last accessed August 4, 2020).

connections"[26] and DePaul's Career Center claims that 63% of graduates complete an internship while in school.[27]

33.     Moreover, DePaul markets its robust student life and campus culture.  For example, DePaul reports having "more than 350 student organizations dedicated to community service, student government, professional development, recreational sports and more" and encourages students to volunteer through community-based organizations.[28]

34.     Throughout its website, Defendant further markets the DePaul on-campus experience as a benefit of enrollment:[29]



---

[26] *Id.*
[27] https://www.depaul.edu/academics/Pages/career-success.aspx (last accessed August 4, 2020).
[28] https://www.depaul.edu/student-life/Pages/student-organizations.aspx (last accessed August 3, 2020).
[29] *See, e.g.*, https://www.depaul.edu/student-life/Pages/default.aspx (last accessed August 3, 2020); https://offices.depaul.edu/student-affairs/student-life/living-on-campus/Pages/default.aspx (last accessed August 3, 2020).



35.     DePaul's representations and promises regarding the on-campus "educational experience" for students are not limited to Defendant's website and marketing materials. DePaul's handbooks, policies, and other materials also refer to the many benefits, resources, and services that Defendant promises to provide on-campus students.

36.     In particular, the 2019-20 Undergraduate Student Handbook,[30] Graduate Student Handbook,[31] and Law Student Handbook[32] all detail resources, facilities, and opportunities that

---

[30] https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/undergraduate/ (last accessed August 3, 2020).

Defendant uniquely makes available to students who study on-campus. As just one example of the kinds of on-campus resources promised in these handbooks, both the Undergraduate and Graduate Student Handbook state that "DePaul University provides information resources and services to students, faculty, and staff at three library locations" and that "[t]he Information Commons, located on the first and second floors of the Richardson Library, provides academic support services, spaces for collaborative work, and access to an array of academic computing resources."[33] Moreover, per these handbooks, "DePaul also has computers available for use by students, faculty or staff, located in computer labs, lounges and lobbies across the campuses. Additional technology access is available to residence hall students; each residence hall is outfitted with study lounges allowing for student access to computers and printers at any time."[34]

37. In addition, these handbooks also detail extracurricular offerings to be provided by Defendant. For instance, all three handbooks explain that DePaul's "Office of Student Involvement fosters student learning and success by providing opportunities for engagement through a wide variety of campus activities and organizations, holistic and intentional advising of student leaders, and the development of purposeful and mutually beneficial partnerships across

---

[31] https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/graduate/ (last accessed August 3, 2020).

[32] https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/law-student-handbook/ (last accessed August 3, 2020).

[33] https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/undergraduate/university-resources/libraries/ (last accessed August 3, 2020); *see also* https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/graduate/university-resources/libraries/ (last accessed August 3, 2020).

[34] https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/undergraduate/university-resources/technology-resources/ (last accessed August 3, 2020); *see also* https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/graduate/university-resources/technology-resources/ (last accessed August 3, 2020).

the University and City of Chicago to maximize access to resources for a rich DePaul campus experience."[35]

***The Academic Catalog For The Spring 2020 Term Is Replete With Promises And Representations Regarding In-Person Instruction And Activities***

38.     The Academic Catalog for the Spring 2020 Term at DePaul contains numerous promises and representations relating to in-person instruction and activities.

39.     For example, in BIO 250 (Cell Biology), DePaul promises a "lecture-laboratory" that covers the "fundamentals of cell form and function studied at the molecular and organelle level, including basic cellular biochemistry, ultrastructure and physiology:"

> **BIO 250 | CELL BIOLOGY | 4 quarter hours**
> **(Undergraduate)**
> Fundamentals of cell form and function studied at the molecular and organelle level, including basic cellular biochemistry, ultrastructure and physiology. Lecture-laboratory.
> **A grade of C- or better in BIO 193 and a grade of C- or better in CHE 134 (or CHE 138 or CHE 144) are prerequisites for this class.**

40.     In BIO 155 (Introduction to Biology with Laboratory), DePaul promises that the course "deals with the scientific method, biological chemistry, structure and function of cells, organs, and organ systems, heredity, evolution and ecology," which "includes a laboratory experience involving biological concepts discussed in class:"

> **BIO 155 | INTRODUCTION TO BIOLOGY WITH LABORATORY | 4 quarter hours**
> **(Undergraduate)**
> This lecture-laboratory course deals with the scientific method, biological chemistry, structure and function of cells, organs, and organ systems, heredity, evolution and ecology. Course includes a laboratory experience involving biological concepts discussed in class. Cannot receive credit for both BIO 115 and BIO 155. No credit for Biology majors or minors.

---

[35] https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/undergraduate/university-resources/student-life/ (last accessed August 3, 2020); *see also* https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/graduate/university-resources/technology-resources/ (last accessed August 3, 2020); https://catalog.depaul.edu/university-catalog-archive/2019-2020-WinSprSum/student-handbooks/law-student-handbook/university-resources/student-involvement/ (last accessed August 3, 2020).

-14-

41. In BIO 201 (Human Anatomy), DePaul promises that the course will cover the "structure of the human body with an emphasis on gross anatomy," with an accompanying "laboratory emphasis on feline dissection:"

**BIO 201 | HUMAN ANATOMY | 4 quarter hours**
**(Undergraduate)**
Structure of the human body with an emphasis on gross anatomy.
Lecture-laboratory. Lecture covers human anatomy; laboratory emphasis
on feline dissection.
**At least Sophomore Standing is a prerequisite for this course.**

42. In BIO 215 (Ecology), DePaul promises "labs [that] involve applying ecological methods and sampling techniques to better understand ecological concepts and to gain an increased awareness of the organization and complexity of the natural world," and that "labs emphasize hypothesis testing and experimental design, the analysis of ecological data, and communicating research findings:"

**BIO 215 | ECOLOGY | 4 quarter hours**
**(Undergraduate)**
This course provides a broad survey of ecological principles and
methods of lab and field investigation, using ecological theory to
explain patterns observed in nature. Topics link interactions between
organisms and their environment to their consequences in populations,
communities, and ecosystems, including: the distribution and abundance
of organisms in nature; factors that influence population size, growth
and regulation; species interactions; community organization and
diversity; and ecosystem level processes focused on moving energy
and matter among living and nonliving parts of the environment. Labs
involve applying ecological methods and sampling techniques to better
understand ecological concepts and to gain an increased awareness of
the organization and complexity in the natural world. Labs emphasize
hypothesis testing and experimental design, the analysis of ecological
data, and communicating research findings.
**BIO 193 is a prerequisite for this class.**

43. In CHE 107 (Proteins and Their Genes), DePaul promises a "discussion and laboratory introduction to many aspects of proteins: their chemical structures, biological functions, how genes store the information to make them, and how changes in genes can lead to changes in proteins, and to cancer and other diseases:"

**CHE 107 | PROTEINS AND THEIR GENES | 4 quarter hours**
**(Undergraduate)**
A discussion and laboratory introduction to many aspects of proteins:
their chemical structures, biological functions, how genes store the
information to make them, and how changes in genes can lead to
changes in proteins, and to cancer and other diseases.

44.     In CHE 131 (General Chemistry I Laboratory), DePaul promises "experimental techniques [that] provide hands-on experience with the course material in CHE 120 and CHE 130:"

> **CHE 131 | GENERAL CHEMISTRY I LABORATORY | 1 quarter hour (Undergraduate)**
> Laboratory course to be taken in conjunction with CHE 120 or CHE 130. The experimental techniques provide hands-on experience with the course material in CHE 120 and CHE 130. CO-REQUISITE(S): CHE 120 or CHE 130 (1 quarter hour)
> **Either CHE 120 or CHE 130 is a co-requisite for this class.**

The Academic Catalog discusses similar "General Laboratory" courses for a number of additional chemistry, physics, and science courses.

45.     In CHE 261 (Instrumental Analysis), DePaul promises a "lecture and lab course" involving "electronics and measurement theory, applied measurement statistics, chromatography, spectroscopy, and electroanalytic instruments and their applications:"

> **CHE 261 | INSTRUMENTAL ANALYSIS | 4 quarter hours (Undergraduate)**
> A lecture and lab course examining instrumentation in chemical analysis. Areas of focus include electronics and measurement theory, applied measurement statistics, chromatography, spectroscopy, and electroanalytical instruments and their applications.
> **Grades of C- or better in both CHE 204 and CHE 205 are prerequisites for this class.**

46.     In NSG 301 (Introduction to the Art and Science of Nursing I), DePaul promises that "knowledge [will be] applied to the care of older adults in the clinical setting, facilitating student understanding of individual expressions of wellness, health and illness, and the development of a professional value system," comprising of "24 lab hours and 24 clinical hours:"

**NSG 301 | INTRODUCTION TO THE ART AND SCIENCE OF NURSING I | 5 quarter hours**
**(Undergraduate)**
The foundations of the art and science of nursing are developed through the study and practice of basic nursing skills, therapeutic communication and critical thinking in classroom, laboratory and clinical settings. Foundations are strengthened through exposure to theories of human development, aging, stress, health teaching and health promotion. Knowledge is applied to the care of older adults in the clinical setting, facilitating student understanding of individual expressions of wellness, health and illness, and the development of a professional value system. Course includes 24 lab hours and 24 clinical hours.
**NSG 322 and NSG 332 are prerequisites for this class.**

47.     In ART 113 (Three Dimensional Foundations), DePaul promises that "through studio projects, students gain practical experience in the planning, production, and evaluation of 3D works of art and design, and gain an understanding of the relationship between form and content:"

**ART 113 | THREE DIMENSIONAL FOUNDATIONS | 4 quarter hours**
**(Undergraduate)**
This course is an introduction to fundamental concepts, terminology, materials, and skills necessary for effective visual communication using three-dimensional media. Through studio projects, students gain practical experience in the planning, production, and evaluation of 3D works of art and design, and gain an understanding of the relationship between form and content. Through lectures, reading, writing, critiques and discussions, students will gain an understanding of the relationship between form and content, and be introduced to the theoretical and historical context specific to three-dimensional art forms. Offered every Quarter.

48.     In ART 117 (Introduction to 3D Printing), DePaul promises that "students will design simple forms with 3D modeling software, utilize and/or modify existing 3D forms from open online resources, and learn how to operate the printer:"

**ART 117 | INTRODUCTION TO 3D PRINTING | 4 quarter hours**
**(Undergraduate)**
This course will extend students' knowledge and experience in the practical and conceptual aspects of contemporary studio art practice by introducing desktop 3D printing technology. The class will focus on basic methods and materials, idea development, and the incorporation of interdisciplinary thinking. Students will design simple forms with 3D modeling software, utilize and/or modify existing 3D forms from open online resources, and learn how to operate the printer. The course will provide students the opportunity to explore new tools and skills, while maintaining a focus on the development of meaningful content in their work. Through projects, readings, slideshows, discussions, examples from art history and contemporary culture, students will actively participate in the evolving relationship between art and technology. Cross-listed with ART 217.
**ART 101 or consent of instructor is a prerequisite for this class.**

49.     In ART 317 (Advanced Figure Sculpture), DePaul promises to provide "an expansion and enrichment of skills in modeling the human figure," and that "all class work will be done from a nude model:"

**ART 317 | ADVANCED FIGURE SCULPTURE | 4 quarter hours (Undergraduate)**
This course will provide an expansion and enrichment of skills in modeling the human figure for students with a basic background in the figure. All class work will be done from a nude model. Home assignments will consist of figure drawings either from departmental Open Studio Figure Drawing sessions or from assigned figure drawings of great masters. Students in this course will further develop their technical and eye/hand coordination skills necessary to depict the human figure three dimensionally in a more professional manner as well as full understanding of the proportions of the human figure and the ability to implement them freely in a dynamic human figure. Course will also point towards the potential possibility of the exploration, conceptualization and interpretation of the human figure within the contemporary art context or other applications related to the students' interests.
**ART 215 or ART 218 or ART 219 or instructor permission is a prerequisite for this course.**

50.     In ART 390 (Advanced Studio Problems), DePaul promises an "intensive studio experience:"

**ART 390 | ADVANCED STUDIO PROBLEMS | 4 quarter hours (Undergraduate)**
Intensive studio experience for students who have completed the requirements in their media specialty.
**Junior or Senior standing and status as an Art, Media and Design major or Art minor or consent of instructor is a prerequisite for this class.**

51.     The Academic Catalog contains many additional examples of promises relating to in-person instruction and activities.  Plaintiffs hereby incorporate the Academic Catalog into their Complaint by reference.

***In Response To COVID-19, DePaul Closed Campuses And Cancelled All In-Person Classes***

52.     Despite contracting and paying for a "rich DePaul campus experience," since March 2020, Plaintiffs and Class members have been denied many of the resources necessary to that experience.

53.     On March 11, 2020, DePaul President Esteban announced that, because of the global COVID-19 pandemic, effective immediately, all in-person classes would be suspended

through the remainder of the Winter 2020 Quarter. President Esteban further noted that, in lieu

of in-person instruction, all classes at DePaul would be held in an online/remote format through

the entirety of the Spring 2020 Quarter, and, for students of DePaul's School of Law, the

remainder of Spring 2020 Semester.

54.     The online learning options being offered to DePaul students are subpar in

practically every aspect. Students can no longer access the materials, facilities, and resources

integral to their education. They have also been deprived immediate, in-person access to faculty

and their peers, missing out on collaborative learning, dialogue, feedback, and critique.

55.     The remote classes that have been offered to Plaintiffs and Class members since

March 2020 are a shadow of the classes that students experienced on-campus prior to the campus

closures. This is particularly true for disciplines and courses of instruction such as the arts and

laboratory-based sciences, where hands-on, in-person instruction is the norm—and, in reality, a

necessity. Indeed, DePaul admitted in its March 11 email to students that, for some courses,

online learning would "not [be] appropriate."[36]

56.     In fact, Defendant has repeatedly acknowledged that online classes do not provide

DePaul students with the education for which they had signed up. For example, in an email to

DePaul students on March 23, 2020, DePaul's Interim Provost, Salma Ghanem, wrote that "this

isn't the year any of us expected" and that faculty "are finding creative solutions" to execute

online learning effectively.[37] Further, in this email, DePaul recognized that "there will be cases

---

[36] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/03-11-2020-all-
university.aspx (last accessed August 3, 2020).
[37] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-23-20-provost-
message.aspx (last accessed August 3, 2020).

where remote instruction is a far different experience than the classroom instruction to which students are accustomed."[38]

57.     In an email to faculty on March 30, 2020, Interim Provost Ghanem all but admitted that DePaul students were paying the full cost of tuition for what is a glorified trial-and-error.  The email noted: "[N]ow we embark on our unintended experiment with universal remote learning."[39]  Interim Provost Ghanem went on to acknowledge that, for the previous week, the goal for faculty had merely been to "get [] courses up and running as best [they] can."[40]  The email also offered faculty "tips for features [they] might try."[41]  Finally, DePaul encouraged faculty to "test out what works for [them], and what doesn't" when it comes to online instruction.[42]

58.     Through these communications, Defendant acknowledged that DePaul faculty were not prepared to teach virtually.  Defendant has conceded that DePaul's delivery of instruction for the Spring 2020 Quarter and Semester would be experimental, even admitted that online learning would be inappropriate for some courses, and communicated that University faculty are merely expected to try their best.

59.     In addition to being forced into experimental online instruction led by unprepared faculty, Plaintiffs and Class members have also been deprived of the on-campus educational and extracurricular resources for which their tuition and fees paid.  The tuition and fees for in-person instruction at DePaul are higher than tuition and fees for many other online institutions because

---

[38] *Id.*
[39] https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-30-20.aspx (last accessed August 4, 2020).
[40] *Id.*
[41] *Id.*
[42] *Id.*

such costs cover not just the academic instruction, but encompass an entirely different experience, which includes but is not limited to:

- Face-to-face interaction with professors, mentors, and peers;

- Facilities such as libraries, laboratories, computer labs, study rooms, and others, like those detailed in DePaul's handbooks;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands-on learning and experimentation; and

- Networking and mentorship opportunities.

60. Yet, despite the fact that remote instruction—which is devoid of the facilities, resources, and services detailed above—is in no way the equivalent of the in-person education for which Plaintiffs and putative Class members contracted and paid, Defendant still refuses to issue tuition and fee refunds for the Spring 2020 Term.

61. As a result of the closure of Defendant's campuses, Defendant has not delivered the educational services, facilities, access, and/or opportunities for which Plaintiffs and members of the Class contracted and paid. Plaintiffs and the Class are therefore entitled to a pro-rated portion of the tuition and fees they paid for the Spring 2020 Term.

62. Specifically, through this lawsuit Plaintiffs seek, individually and on behalf of the Class, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Term at DePaul, when classes moved online

and campus services ceased being provided.  Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

## CLASS ALLEGATIONS

63.    Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiffs bring this action on behalf of themselves and the following Class:

> All people who paid Defendants' Spring 2020 Term tuition and/or fees for in-person educational services that DePaul failed to provide, and whose tuition and fees have not been refunded (the "Class").

64.    Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

65.    Plaintiffs also seek to represent a subclass consisting of Class members who reside in Illinois (the "Subclass").

66.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

67.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and

may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

68. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    (a)    whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;

    (b)    whether Defendant has provided the services for which Class and Subclass members contracted;

    (c)    whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide.

    (d)    whether Defendant has unlawfully converted money from Plaintiffs, the Class, and Subclass; and

    (e)    whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust enrichment.

69. **Typicality.** Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

70. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class and Subclass. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

71. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

72. In the alternative, the Class and Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

<u>**COUNT I**</u>
**Breach Of Contract**
**(On Behalf Of The Class And Subclass)**

73.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

74.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant

75.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from DePaul, including the Academic Catalog for the Spring 2020 Term, together with Defendant's handbooks, catalogues, bulletins, circulars, and regulations.

76.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring 2020 Term, Plaintiffs and Class Members viewed the Academic Catalog to make specific course selections prior to

registering and paying for selected courses. Defendant's Academic Catalog constitutes an offer to enter a contractual agreement.

77.     The Academic Catalog provided Plaintiffs and Class Members with information regarding the courses offered, the relevant department, credit hours, classroom activities, and the manner in which each course is to be held.

78.     Plaintiffs and Class Members' payment of tuition and fees were intended to cover in-person education, experiences, and services for the entirety of the Spring 2020 Term.

79.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above. Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid tuition monies due for the Spring 2020 Term at DePaul. Tuition and fees for the Spring 2020 Term were intended to cover in-person educational services from January through May 2020. In exchange for tuition and fees paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring 2020 Term.

80.     Defendant materially breached the parties' contractual agreement by failing to provide in-person educational services for the entirety of the Spring 2020 Term. The provisions of the contract breached by Defendant include, but are not limited to the provision setting forth the details of in-person educational services as described in the Academic Catalog for the Spring 2020 Term. The Spring 2020 Term Academic Catalog indicated classes would be administered in an in-person, on-campus setting. The Academic Catalog did not make any reference to the administration of courses in an online format.

81.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational

services. Defendant has retained monies paid by Plaintiffs and the Class for their Spring 2020

Term tuition and fees, without providing them the benefit of their bargain.

82.     Plaintiffs and members of the Class and Subclass have suffered damage as a

direct and proximate result of Defendant's breach, including but not limited to being deprived of

the education, experience, and services to which they were promised and for which they have

already paid.

83.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and

Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but

not be limited to reimbursement of certain tuition, fees, and other expenses that were collected

by Defendant for services that Defendant has failed to deliver. Defendant should return the pro-

rated portion of any Spring 2020 Term tuition and fees for education services not provided since

DePaul shut down its campuses and transitioned to online instruction on March 11, 2020.

84.     Defendant's performance under the contract is not excused due to COVID-19.

Indeed, Defendant should have refunded the pro-rated portion of any education services not

provided. Even if performance was excused or impossible, Defendant would nevertheless be

required to return the funds received for services it will not provide.

85.     Therefore, Defendants should return a pro-rata share of the tuition and fees paid

by Plaintiffs and Class Members that relate to those in-person educational services that were not

provided after DePaul shut down.

### COUNT II
### Unjust Enrichment
### (On Behalf Of The Class And Subclass)

86.     Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this complaint.

87.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

88.     Plaintiffs and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring 2020 Term tuition and other fees in exchange for certain service and promises.  Tuition for Spring 2020 Term was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Term.

89.     Defendant voluntarily accepted and retained this benefit by accepting payment.

90.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down its campuses and transitioned to online instruction on March 11, 2020.

91.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

92.     Defendant should be required to disgorge all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

**COUNT III**
**Conversion**
**(On Behalf Of The Class And Subclass)**

93.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

94.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

95.     Plaintiffs and members of the Class and Subclass have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring 2020 Term tuition and fee payments to Defendant.

96.     Defendant intentionally interfered with the rights of Plaintiffs, the Class, and the Subclass when they moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

97.     Plaintiffs and members of the Class and Subclass demand the return of the pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down its campuses and transitioned to online instruction on March 11, 2020.

98.     Defendant's retention of the fees paid by Plaintiffs and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiffs and members of the Class and Subclass of the benefits for which the tuition and fees paid.

99.     This interference with the services for which Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

100.    Plaintiffs and members of the Class and Subclass are entitled to the return of pro-rated portion of any Spring 2020 Term tuition and fees for education services not provided since DePaul shut down its campuses and transitioned to online instruction on March 11, 2020.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Class and Subclass; and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b) For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

(c) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

Dated: September 8, 2020

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

By:     */s/ Carl V. Malmstrom*

Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Email: malmstrom@whafh.com

**BURSOR & FISHER, P.A.**

L. Timothy Fisher
Neal J. Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* app. forthcoming)
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

Richard D. Schwartz
Shanon J. Carson
Ellen T. Noteware
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rschwartz@bm.net
scarson@bm.net
enoteware@bm.net

E. Michelle Drake
Joseph Hashmall
**BERGER MONTAGUE PC**
Minneapolis, MN
Tel: (215) 875-3000
Fax: (215) 875-4604
emdrake@bm.net
jhashmall@bm.net

*Attorneys for Plaintiffs and the Proposed Class*