IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALHIX OYOQUE, ENRIQUE CHAVEZ, and EMMA SHEIKH, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 20 C 3431 |
| DEPAUL UNIVERSITY, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The coronavirus pandemic has taken something from each of us. Whether it's time with loved ones, celebrations of major milestones, or simply walking without a facemask, the pandemic has aggrieved us all in some way. But not all these grievances are legally redressable. Alhix Oyoque, Enrique Chavez, and Emma Sheikh—on behalf of themselves and others individually situated—have sued DePaul University alleging breach of contract (Count 1) and unjust enrichment (Count 2).[1] They claim that they and DePaul entered into a contract providing, among other things, that in exchange for tuition, DePaul would provide in-person instruction and access to facilities and resources. In the plaintiffs' view, this contract was breached when—due to the pandemic—DePaul transitioned to remote instruction. Pursuant to Federal Rule of Civil

---

[1] The plaintiffs have voluntarily dismissed Count 3 of their amended complaint, in which they asserted a conversion claim.

Procedure 12(b)(6), DePaul has moved to dismiss the complaint for failure to state a claim upon which can be granted. For the reasons stated below, the Court grants that motion.

## Background

DePaul is a private research university located in Chicago. Its total enrollment, including undergraduate and graduate students, exceeds 22,000 students. The plaintiffs and the putative class members they wish to represent were enrolled students during the 2019–20 school year who paid the cost of tuition and other mandatory fees for what they expected would be on-campus courses. Oyoque was an undergraduate student pursuing a bachelor's degree in health science, Chavez was an undergraduate student studying psychology, and Sheikh was in the first year of a master's elementary education program.

On March 11, 2020, due to emergence of COVID-19, DePaul's president, Dr. A. Gabriel Esteban, informed students that the University would administer winter quarter exams remotely and transition to remote instruction for the spring quarter.[2] He also announced that all University-sponsored events would be canceled or postponed. In a March 23, 2020 letter to students from interim provost Salma Ghanem, she stated that the University recognized that the "shift to remote delivery of courses certainly [was] an abrupt change from the usual way" of conducting courses. Am. Compl. ¶ 12.

The plaintiffs do not disagree that the pandemic made it necessary to transition

---

[2] Except for its law school (which uses the semester system), DePaul's undergraduate and graduate programs operate on the quarter system. In 2020, the winter quarter began on January 4, and classes and final exams were scheduled to end on or around March 20. The 2020 spring quarter began on March 28, and classes and final exams were scheduled to end on or around May 14.

to remote instruction. Instead, their quarrel is with the value of the education they received relative to the tuition they paid. The plaintiffs allege that they and the University were parties to a contractual agreement where, in exchange for tuition and fees, DePaul would provide in-person educational services, experiences, and opportunities. The terms of this agreement, the plaintiffs allege, were set forth in publications from DePaul, including the University's academic catalog and the undergraduate and graduate student handbooks. For example, the plaintiffs cite to portions of the academic catalog and argue that its course descriptions promise an in-person experience. They also cite student handbooks and various marketing materials that promote the many on-campus opportunities and services available at DePaul.

The plaintiffs claim that because of DePaul's decision to transition to remote instruction, they did not receive the full benefit of their contractual bargain. They further allege that their remote instruction and online college experience were "subpar" when compared to their in-person instruction and experience. Am. Compl. ¶ 11, 54. Because each of the plaintiffs paid tuition and fees expecting in-person classes and services, they claim that DePaul's decision to close its campus and suspend in-person classes entitles them to a partial refund. This refund would be "proportionate to the amount of time that remained in the Spring 2020 Term when classes moved online and campus services ceased being provided." *Id.* ¶ 17, 62.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss, the court must construe "all well-pleaded allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (alterations accepted) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### 1. Educational malpractice

In Illinois, claims that "raise[ ] questions about the reasonableness of an educator's conduct in providing educational services" or that "require[ ] an analysis of the quality of education," are claims for educational malpractice and are non-cognizable. *Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶ 28, 966 N.E.2d 540, 549; *see also Ross v. Creighton Univ.*, 957 F.2d 410, 414–17 (7th Cir. 1992) (recognizing that the "great weight of authority" bars "any attempt to repackage an educational malpractice claim as a contract claim" and identifying the many "policy concerns that counsel against allowing claims for educational malpractice"). "To state a [viable] claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough." *Ross*, 957 F.2d at 416–17. Rather, the plaintiff must allege that the institution "failed to perform [a promised educational] service at all." *Id.* at 417.

DePaul argues that the plaintiffs' claims must be dismissed because they are premised upon allegations of education malpractice. The plaintiffs contend that they are

4

not asserting educational malpractice claims. They argue that rather than challenging the quality of their education, they are seeking to vindicate an alleged promise to provide in-person learning. Thus, in their view, what they call their "straightforward" contractual claims are not appropriately read as educational malpractice claims.

Having considered the parties' arguments, the Court agrees with the plaintiffs. Though portions of the plaintiffs' allegations *can* be read as talking about the value of online instruction, at its core the complaint's focus is breach of contract—whether DePaul provided the specific services it allegedly promised. To the extent the plaintiffs discuss the difference in value between in-person and online education, that discussion is limited to alleging damages from the defendant's alleged breach of contract, not an allegation that any decreased value *constitutes* the breach of contract. *See, e.g.*, Am. Compl. ¶ 11 ("As a result of the closure of Defendant's campuses defendant has not delivered educational services. . . for which Plaintiffs . . . contracted and paid. The online learning options being offered to DePaul students were subpar . . . . [and] the remote learning options are in no way the equivalent of the in-person education for which Plaintiffs . . . contracted and paid."); *id.* ¶ 55 ("The remote classes that have been offered . . . are a shadow of the classes that students experienced on-campus prior to the campus closures.")

In sum, the complaint does not challenge the adequacy of a promised educational service, and the resolution of the plaintiffs' claims would not require "second-guessing the professional judgment of the University faculty on academic matters." *See Ross*, 957 F.2d at 417.

5

## 2. Breach of contract (Count 1)

Even though plaintiffs' claims are not appropriately understood as asserting educational malpractice, they are still subject to dismissal for failure to state a claim. In Illinois, a plaintiff claiming breach of contract must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted).

As discussed above, in the educational context plaintiffs "must do more than simply allege that the education was not good enough. Instead, [plaintiffs] must point to an identifiable contractual promise that the [educational institution] failed to honor." *Ross*, 957 F.2d at 416–17; *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) ("[T]he student's complaint must be specific about the source of [the] . . . contract, the exact promises the university made to the student, and the promises the student made in return."). "The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009); *see also DiPerna v. Chicago Sch. of Prof'l Psychology*, 893 F.3d 1001, 1006–07 (7th Cir. 2018) ("In Illinois, 'a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins.'").

Here, the parties agree that a contractual relationship existed between the plaintiffs and the University. However, DePaul argues that plaintiffs have not sufficiently alleged that the University had a specific contractual obligation to provide an in-person

6

education. The Court agrees. Though the plaintiffs cite often to DePaul's academic catalog, that document does not contain any promises that classes will be held in-person or even on campus. For example, at oral argument, plaintiffs' counsel said that Oyoque was enrolled in "BIO 250 (Cell Biology)", a course the academic catalog describes as a "lecture-laboratory" that will cover the "fundamentals of cell form and function."[3] See Am. Compl. ¶ 39. The plaintiffs argue that this description is a promise that the course will take place *in a* laboratory. But that interpretation of the catalog is only possible if one adds words to the course's description. As described in the catalog, the BIO 250 lecture-laboratory could be conducted remotely or in person. For that matter, the same could be said of any of the courses the plaintiffs cite in their complaint.[4]

The plaintiffs' reliance on DePaul's student handbooks does not assist them. Though a student handbook may contain material that forms part of the contract between a university and its students, only the handbook's "specific promises" become part of the contract, not its "expression[s] of intention, hope or desire." See *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *7 (N.D. Ill. Feb. 4, 2019)

---

[3] This allegation is not included in the plaintiffs' complaint. In fact, the plaintiffs do not allege that they took any of the courses that are actually referenced in the complaint. Because a class has not been certified, at this point the Court assesses only the claims of the named plaintiffs, not those of the putative class.

[4] At oral argument, the plaintiffs claimed that certain opportunities for experiential learning (e.g., clinical studies and externships) purportedly promised by DePaul in the catalog were not available after DePaul transitioned to remoted instruction. But the plaintiffs make no such allegation in their complaint and have not alleged which, if any, of the plaintiffs were deprived of these experiences. Thus, the Court does not consider these contentions for purposes of the present motion.

(citing *Abrams v. Ill. Coll. of Podiatric Med.*, 77 Ill. App. 3d 471, 476, 395 N.E.2d 1061, 1065 (1979)).  In other words, "definite" and "concrete promise[s]" must be distinguished from "unenforceable expression[s]."  *Galligan*, 2019 WL 423356, at *7 (internal quotation marks omitted).

The plaintiffs point to four statements from DePaul's various student handbooks. The first statement appears in handbooks for undergraduate and graduate students:

> The Office of Student Involvement fosters student learning and success by providing opportunities for engagement through a wide variety of campus activities and organizations, holistic and intentional advising of student leaders, and the development of purposeful and mutually beneficial partnerships across the University and City of Chicago to maximize access to resources for a rich DePaul campus experience

Am. Compl. ¶ 37.  The plaintiffs argue this is evidence that they contracted with DePaul for an on-campus educational experience.  Instead, it seems clear that this is an expression of intention—an aspirational statement—rather than a statement aimed at obligating or committing the University to particular actions.  Moreover, this statement is readily distinguishable from the promise made in *Galligan*, a case the plaintiffs cite for support.  In *Galligan*, the institution's student handbook asserted that it was "committed to ensuring that qualified students with disabilities are afforded reasonable accommodations."  *Galligan*, 2019 WL 423356, at *7.  The *Galligan* statement was a "definite" promise in that it set out an undertaking that the plaintiff could plausibly claim was breached.  *See id.*  The statement here, however, holds no more concreteness than a mission statement or a list of aspirations.

The plaintiffs' other handbook evidence doesn't fare any better:

- "DePaul University provides information resources and services to students, faculty, and staff at three library locations"

- "The Information Commons, located on the first and second floors of the Richardson Library, provides academic support services, spaces for collaborative work, and access to an array of academic computing resources"
- "DePaul also has computers available for use by students, faculty or staff, located in computer labs, lounges and lobbies across the campuses"
- "Additional technology access is available to residence hall students; each residence hall is outfitted with study lounges allowing for student access to computers and printers at any time"

Am. Compl. ¶ 36. Even viewed in the light most favorable to the plaintiffs, these statements, without more, seem informative rather than promissory. They appear on their face to be intended to inform students of the resources and amenities available to them. In other words, DePaul's statement that it provides these on-campus resources does not amount to a contractually-enforceable *promise* to provide them irrespective of changing or unanticipated circumstances. By way of analogy, one would not expect that a disaster (such as a fire or flood) that rendered the campus library unusable for an extended period would give rise to a breach of contract claim based on the quoted language from the student handbook.

Plaintiffs also argue that in-person instruction was implied by DePaul's marketing materials. However, marketing materials "are not among the terms of the contract between universities and their students." *See Galligan*, 2019 WL 423356, at *6 (citing *DiPerna*, 893 F.3d at 1006–07)); *see also Bissessur*, 581 F.3d at 601. Even if that weren't true, the statements the plaintiffs proffer as specific promises are actually "expression[s] of intention, hope or desire." *See Galligan*, 2019 WL 423356, at *7. DePaul's markets itself as a place that "weaves together mind, place, people and heart," provides "a strong sense of community" with a "robust student life," and offers the chance to "build community connections." Am. Compl. ¶ 31–33. As alluring as those

9

statements might be, they aren't *concrete promises*. Instead, the marketing materials cited are unenforceable expectations that do not "comprise part of a contract between student and university." See *Galligan*, 2019 WL 423356, *6 (citing *Abrams*, 77 Ill. App. 3d at 477, 395 N.E.2d at 1065).

All in all, none of the facts alleged by the plaintiffs amounts to a concrete contractual promise to provide in-person educational services, experiences, or opportunities. Consequently, count 1 fails to state a claim.[5]

### 3. Unjust enrichment (Count 2)

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the "defendant has unjustly retained a benefit to the plaintiff's detriment and the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." See *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (alteration accepted). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 567, 805 N.E.2d 241, 243 (2004). Thus, the remedy of unjust enrichment is unavailable "[w]here there is a specific contract that governs the relationship of the parties." *Id.*

In this case, neither party denies the existence of a contract between the DePaul and its students. Though the plaintiffs argue that an unjust enrichment claim is still valid

---

[5] DePaul provided additional arguments for dismissal of the breach-of-contract claim, including a contention that it has discretion to modify the format of classes and an argument that the plaintiffs failed to allege that its decision to transition to remote learning was arbitrary, capricious, or in bad faith. Because the Court has dismissed this claim on other grounds, it need not consider these additional arguments.

when parties dispute a contract's terms, the Court is not persuaded. The one case they cite for this proposition, *Francis v. Bankcard America, Inc.*, No. 93 C 5510, 1999 WL 1289110 (N.D. Ill. Jan. 4, 1999), is easily distinguishable. There, the parties had no written contract in evidence, and the plaintiffs had not asserted a contract-based claim. *Id.* at 11. And as the court noted, even if there was a contract, it may not have even been enforceable. *Id.* Here, of course, there plaintiffs allege there is a written contract, and they have directly asserted a claim for breach of that contract.

It is generally true at the pleading stage that "a party may plead claims in the alternative," including an unjust enrichment claim as an alternative to a breach of contract claim. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (2005). But when the unjust enrichment claim is premised on a failure to fulfill contractual terms—which is the case here—this general rule does not apply, and dismissal of the unjust enrichment claim is appropriate. *See id.* at 604–05, 836 N.E.2d at 704–05; *accord, Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (plaintiff failed to state a claim for unjust enrichment where the claim rested on the breach of an express contract). In this case, the plaintiffs allege there is a contract, and the defendant does not dispute this. For this reason, the Court dismisses Count 2. *See Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*, No. 02 C 5325, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003) (St. Eve, J.) (plaintiff's alternative unjust enrichment claim dismissed because it was premised on the defendant's failure to fulfill the terms of an express contract).

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss

11

[docket no. 17]. Unless the plaintiffs submit by March 12, 2021 a proposed complaint stating a viable claim over which this Court has jurisdiction, the Court will enter judgment in favor of the defendant. The case is set for a telephone status hearing on March 24, 2021 at 9:05 a.m. to set any necessary schedules for further proceedings, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

```
                                    _____
                                         MATTHEW F. KENNELLY
                                         United States District Judge
```

Date: February 21, 2021