IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALHIX OYOQUE, ENRIQUE CHAVEZ, and EMMA SHEIKH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DEPAUL UNIVERSITY, <br><br> Defendant. | Case No. 1:20-cv-3431 <br><br> Judge: Matthew Kennelly <br> Magistrate: M. David Weisman |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE
<u>SECOND AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

   I.  THE SAC IDENTIFIES THE SPECIFIC PROMISES THAT DEPAUL MADE TO EACH OF THE PLAINTIFFS, THUS ALLOWING PLAINTIFFS LEAVE TO AMEND TO ASSERT A BREACH CONTRACT CLAIM WOULD NOT BE "FUTILE"........................ 3

      A.   DePaul's Argument That It Was Permitted To Unilaterally Modify The Contract With Its Students Is Untimely And Irrelevant To The Motion To Amend ................ 6

      B.   Whether Defendant's Conduct Was Arbitrary, Capricious, Or In Bad Faith Is Irrelevant To Plaintiffs' Breach Contract Claim ......................................................... 8

   II.  PLAINTIFFS' AMENDED UNJUST ENRICHMENT CLAIM IS NOT FUTILE ........... 8

   III.  PLAINTIFFS PROPERLY SEEK RECOVERY OF UNREFUNDED FEES ................ 9

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Balabanos v. North Am. Inv. Group, Ltd.,*
   708 F.Supp. 1488 (N.D. Ill. 1988) ........................................................................................ 6

*Bergeron v. Rochester Inst. of Tech.,* No. 20-CV-6283 (CJS),
   2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) ................................................................... 7, 9

*Bridget McCarthy v. Loyola Marymount Univ.,*
   No. 220 CV 04668 -SBJ EMX, 2021 WL 268242 (C.D. Cal. Jan. 8, 2021) ............................ 7

*CITGO Petroleum Corp. v. Integrys Energy Servs., Inc.*,
   No. 10 C 4743, 2012 WL 2129402 (N.D. Ill. June 12, 2012) .................................................. 5

*Doyle v. Holy Cross Hosp.*,
   289 Ill. App. 3d 75 (1997) ....................................................................................................... 6

*Finnegan v. Baldwin*,
   No. 20-CV-218-DWD, 2020 WL 6583091 (S.D. Ill. Nov. 10, 2020) ....................................... 3

*Galligan v. Adtalem Glob. Educ. Inc.*,
   No. 17 C 6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019) ....................................................... 5

*Hiatt v. Brigham Young Univ.*,
   No. 1:20-CV-00100-TS, 2021 WL 66298 (D. Utah Jan. 7, 2021) ........................................... 5

*Ibrahim v. Stericycle, Inc.*, No. 16 C 4294,
   2017 WL 11562210 (N.D. Ill. June 27, 2017) ..................................................................... 3, 4

*In re: University of Miami COVID-19 Tuition and Fee Refund Litigation*,
   No. 20-22207-CIV, 2021 WL 1251139 (S.D. Fla. Mar. 5, 2021) ............................................ 9

*Metzner v. Qunnipiac Univ.*,
   2021 WL 1146922 (D. Conn. Mar. 25, 2021) ..................................................................... 7, 9

*Nguyen v. Stephens Inst.*,
   No. 20-CV-04195-JSW, 2021 WL 1186341 (N.D. Cal. Mar. 30, 2021) .................................. 5

*Omoro v. Brandeis Univ.*,
   No. CV 20-11021-NMG, 2021 WL 1408115 (D. Mass. Apr. 13, 2021) ............................. 7, 9

*Patel v. University of Vermont and State Agricultural College*,
   2021 WL 1049980 (D. Vt. Mar. 15, 2021) .............................................................................. 7

*Penn v. Ryan's Family Steak Houses, Inc.*,
 269 F.3d 753 (7th Cir. 2001) .................................................................................................. 6

*Saroya v. Univ. of the Pacific*,
 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) ........................................................................ 7

*Spano v. Boeing Co.*,
 No. 3:06-CV-00743 DRH, 2008 WL 11333702 (S.D. Ill. Aug. 22, 2008) ............................... 3

*Wigod v. Wells Fargo Bank, N.A.*,
 673 F.3d 547 (7th Cir. 2012) .................................................................................................. 6

*Wilson v. Illinois Benedictine College*,
 112 Ill.App.3d 932 (1983) ...................................................................................................... 8

## INTRODUCTION

Plaintiffs' proposed Second Amended Class Action Complaint (the "SAC") identifies specific contractual promises made to Plaintiffs that Defendant DePaul University ("DePaul") breached. Accordingly, the Court should allow Plaintiffs to file the SAC which alleges all of the elements of a breach of contract: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Sevugen v. Direct Energy Servs., LLC,* 931F. 3d 610, 614 (7th Cir. 2019).

The SAC identifies specific contractual promises that DePaul made to Plaintiff Enrique Chavez. The SAC specifies that Mr. Chavez enrolled in and paid to attend PSY 574, the final segment of a year-long, in-person practicum course for clinical students. DePaul specifically promised Mr. Chavez that PSY 574 would be held at DePaul's Family and Community Service Center, a specific location on DePaul's campus. SAC ¶ 23.[1] DePaul further promised Mr. Chavez that PSY 395, a fieldwork/internship course in which he enrolled, would be held in-person at an "internship site" so that he would receive "real-world practice" and "engagement in [his] community." *Id.* ¶ 25. The SAC alleges that DePaul also promised Mr. Chavez that PSY 361 would be taught in a specified physical classroom located on DePaul's campus. *Id.* ¶¶ 20-21, 26. The SAC alleges that DePaul breached all of those promises and failed to refund any portion of the money Mr. Chavez paid DePaul for his Spring 2020 classes. *Id.* ¶ 24.

The SAC alleges that DePaul promised Plaintiff Emma Sheikh that the Elementary Education courses in which she enrolled and for which she paid would "take place primarily in person on the Lincoln Park campus." *Id.* ¶ 31. The SAC alleges that DePaul specifically promised that the classes in which Ms. Sheikh enrolled in Spring 2020 would take place in-

---

[1] DePaul's promise was consistent with the historical practice for PSY 574 which had been held at that location earlier in the year. *Id.*

1

person and not online. *Id.* ¶ 32. DePaul promised it would provide Ms. Sheikh with a "supervised field experience" in TL 583, which DePaul represented was a "field-based course" that would take place "at school sites." DePaul failed to provide Ms. Sheikh with any supervised field experiences at school sites during the Spring 2020, thus breaching its promise to her. *Id.* ¶ 33.[2]

The SAC alleges that DePaul specifically promised Plaintiff Alhix Oyoque that DePaul would hold her Spring 2020 classes in specified physical locations on DePaul's campus. *Id.* ¶¶ 14-15. DePaul promised Ms. Oyoque that she would be taught in-person, by hands-on teachers, that DePaul would provide her with "access to the latest instrumentation and modern laboratory facilities," and physical access to buildings on DePaul's campus. *Id.* ¶¶ 9-12. The SAC specifies that DePaul promised that the Bio 250 Cell Biology class in which Ms. Oyoque enrolled would be held in a laboratory on-campus, a promise it breached. *Id.* ¶ 14.

The SAC alleges that DePaul offered students the ability to take on-line classes (*id.* ¶¶ 72-74) but none of the Plaintiffs enrolled in any class that was taught remotely or through on-line means, opting instead to pay for in-person classes at specified physical locations where they would have in-person access to instructors. *Id.* ¶ 13, 75.

The Court should grant Plaintiffs' motion for leave to amend the pleadings because the SAC addresses the issues that formed the basis for this Court's dismissal of the breach of contract claim in Plaintiffs' First Amended Complaint (the "FAC").[3] Moreover, in accordance

---

[2] Likewise, DePaul promised that it would provide Ms. Sheikh with fieldwork and clinical experiences and in-person learning in TL 413, 416, and 419 that it did not provide. *Id.* ¶¶ 34-36.
[3] *See* ECF 30, Motion to Dismiss Opinion and Order at 7, n.3 ("MTD Op.") noting that Plaintiffs did not allege that they took any of the courses referenced in the FAC); *id.* at n.4 (noting that Plaintiffs did not allege that they were denied "certain opportunities for experiential learning (e.g., clinical studies and externships").

2

with the Federal Rules, leave to amend should be "freely granted" "except in cases of delay, bad faith, or where prejudice to the opposing party would result."[4]

Contrary to DePaul's contentions, it would not be "futile" to allow Plaintiffs' leave to amend since the SAC alleges the specific promises that were made to each of the Plaintiffs for in-person classes that were not specified in the FAC. A motion to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Ibrahim v. Stericycle, Inc.*, No. 16 C 4294, 2017 WL 11562210, at *1 (N.D. Ill. June 27, 2017) (citation omitted) (granting leave to amend). Here, Plaintiffs' SAC identifies on its face specific promises that DePaul made to the Plaintiffs and breached.

## ARGUMENT

**I. THE SAC IDENTIFIES THE SPECIFIC PROMISES THAT DEPAUL MADE TO EACH OF THE PLAINTIFFS, THUS ALLOWING PLAINTIFFS LEAVE TO AMEND TO ASSERT A BREACH CONTRACT CLAIM WOULD NOT BE "FUTILE"**

Leave to amend would not be futile because Plaintiffs' SAC cures the deficiencies identified in the Court's opinion and order granting Defendants' motion to dismiss the FAC's breach of contract claims. Plaintiffs have added detailed allegations that sufficiently plead the existence of a contract between Plaintiffs and DePaul for in-person instruction and access to DePaul's on-campus resources.

The SAC specifies the courses in which each Plaintiff enrolled during the Spring 2020 term, along with specific promises made by DePaul that those courses would be administered in-

---

[4] *Spano v. Boeing Co.*, No. 3:06-CV-00743 DRH, 2008 WL 11333702, at *2 (S.D. Ill. Aug. 22, 2008); *see also Finnegan v. Baldwin*, No. 20-CV-218-DWD, 2020 WL 6583091, at *1 (S.D. Ill. Nov. 10, 2020) (granting leave to amend).

person, not online. SAC ¶¶ 9-39.[5] The SAC also identifies various in-person experiential learning opportunities that DePaul promised Mr. Chavez, Ms. Sheikh, and Ms. Oyoque, but failed to provide them. *Id.* Together, these allegations sufficiently identify a contractual promise for in-person education and campus access that DePaul breached.

For example, the SAC alleges that Mr. Chavez registered and paid for a specific class – PSY 574 – a course that DePaul promised would provide Mr. Chavez with a practicum experience at a specified location on DePaul's Lincoln Park campus. SAC ¶¶ 23-24. A "practicum" is defined by Merriam-Webster's dictionary as a course "that involves the supervised practical application of previously studied theory."[6] The SAC alleges that DePaul did not provide the promised practical experience, breaching its contract with Mr. Chavez. *Id.* ¶ 24.[7]

Defendant's argument that the SAC's detailed allegations – including thorough references to Defendant's University Handbook – do not sufficiently state a viable contract for in-person instruction to survive a motion to dismiss are unpersuasive.[8] In response to Plaintiffs'

---

[5] In fact, DePaul represented that the courses needed to complete Ms. Oyoque's undergraduate degree program had to be completed in-person and were not available online. *Id.* ¶ 13.
[6] https://www.merriam-webster.com/dictionary/practicum
[7] Regarding Plaintiff Oyaque's allegations in the SAC, Defendant repeatedly references the BIO 250 syllabus attached as Exhibit 7 to Plaintiffs' SAC, which it attempts to brush aside by characterizing as a "twenty-year old syllabus." Opp. at 1, 4-5. In fact, Plaintiffs' Complaint acknowledged that the syllabus was from "previous years" and was meant to highlight that labs in a class like BIO 250 are "a significant part of the course." SAC ¶ 14. Likewise, the 2020 syllabus attached as Exhibit A to Defendant's opposition similarly emphasizes that labs play an important role in classes likes BIO 250. ECF No. 35-1 at 5 ("Labs are intended to help reinforce some of the principles described in lecture; develop proficiency and familiarity in some types of lab techniques; and help you develop both analytical reasoning and data presentation skills."). Does Defendant truly contend that its "labs" conducted during remote learning, held alone in the apartments of students like Plaintiff Oyoque, are comparable to labs conducted in "modern laboratory facilities" with "access to the latest instrumentation" and under the supervision of a professor? *See* SAC ¶10. Plaintiff Oyoque continues to maintain that she did not receive the education she paid for. *See* SAC ¶¶ 8-18.
[8] Defendant's claim that Plaintiffs "doubled down" on marketing materials is unfounded. Opp. at 3. While the SAC includes additional references to Defendant's marketing materials, Plaintiffs

4

additional allegations about the specific courses in which Plaintiffs enrolled for the Spring 2020 term, Defendant appears to concede, as it must, that the SAC has identified several "definite" and "concrete promise[s]" of in-person education, not "unenforceable expression[s]." *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6-7 (N.D. Ill. Feb. 4, 2019).

Rather than arguing that these specified promises are not concrete or enforceable, Defendant instead contends that the promises – for example, to provide "classroom instruction" and "fieldwork experiences" – are somehow ambiguous. *See* Opp. at 5-6. Although it should be crystal clear that students would not receive experiences that DePaul promised would be held at a specified clinical locations, or in classrooms, laboratories or in the "field" from their bedroom over Zoom, if the promises are ambiguous, the Court should look at the course of dealing and trade usage of the terms at issue to resolve the ambiguity and not deny Plaintiffs the right to file the SAC. *See CITGO Petroleum Corp. v. Integrys Energy Servs., Inc.*, No. 10 C 4743, 2012 WL 2129402, at *7 (N.D. Ill. June 12, 2012) (finding that where contract terms are susceptible to more than one interpretation, courts could consider the parties' course of performance, prior course of dealing, and trade usage in the relevant industry, finding that "[g]enerally, the interpretation of ambiguous contract terms is a question of fact for the jury."). Since the SAC's

---

do not allege that such materials provide the *terms* of their contract with Defendant. Rather, such allegations provide further context of Plaintiffs' reasonable understanding that their Spring 2020 term courses would be administered in-person. Indeed, in cases where students have made similar contract allegations, several federal courts have found marketing materials and websites to be relevant. *See, e.g., Nguyen v. Stephens Inst.*, No. 20-CV-04195-JSW, 2021 WL 1186341, at *3-4 (N.D. Cal. Mar. 30, 2021) (denying motion to dismiss breach of contract claim where plaintiff alleged that "AAU promised him in-person instruction and access to on-campus services through its 'marketing, advertisements, and other public representations" and in its Enrollment Agreement and Spring 2020 Catalog Addendum); *Hiatt v. Brigham Young Univ.*, No. 1:20-CV-00100-TS, 2021 WL 66298, at *4 (D. Utah Jan. 7, 2021) (denying motion to dismiss breach of contract claim where, in addition to other materials, plaintiff alleged that, in its "website, promotional and marketing materials," defendant repeatedly promoted its in-person educational services).

5

allegations must be taken as true, with all reasonable inferences drawn in the light most favorable to Plaintiffs, Defendant's narrow reading of Plaintiffs' claims should be rejected. *See Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D. Ill. 1988).

Plaintiffs have alleged sufficient facts to support their contract claim. The SAC identifies several definite and concrete statements DePaul made to each Plaintiff, promising that they would each receive in-person instruction and experiential learning opportunities during the Spring 2020 term. Thus, the Court should grant Plaintiffs' motion to amend.

### A. DePaul's Argument That It Was Permitted To Unilaterally Modify The Contract With Its Students Is Untimely And Irrelevant To The Motion To Amend

DePaul argues that it would be futile to allow Plaintiffs to amend because DePaul was "contractually allowed to modify the format of its courses" Opp. at 6-8, at its whim and without consequence. It is black letter law that although a party to a contract may reserve the right to modify a *specified term* upon the occurrence of a *specified event*, a provision – like the one DePaul cites – purporting to give one party a blanket right to unilaterally modify, breach, or cancel a contract for any reason or no reason at all is illusory and unenforceable. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) ("[W]hen the promisor conditions a promise on *his own* future action or approval, there is no binding offer.") (emphasis in the original and citation omitted); *see also Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 759 (7th Cir. 2001) ("An illusory promise, one which 'by its terms makes performance entirely optional with the promisor,' cannot form the basis for a valid contract[] because 'a contract is unenforceable if it fails to obligate [one party] to do anything'.") (internal citations omitted); *Doyle v. Holy Cross Hosp.*, 289 Ill. App. 3d 75, 79 (1997), *aff'd*, 186 Ill. 2d 104 (1999) (noting that traditional contract principles only "allow parties to modify their contract[] if there is

6

consideration to support the modification" but that "[a] modification solely for the benefit of one of the parties is unenforceable").

Even if such a provision were permissible, the cited modification language does not say what DePaul now claims. It does not grant DePaul the ability to modify the *format* of a course, as DePaul claims. Even so, DePaul was not entitled to change the terms of the contract after Plaintiffs performed their contractual obligations. Yet, as Plaintiffs specifically allege, Defendant eliminated the in-person classes and services it was obligated to provide *after* Plaintiffs performed by paying their tuition and fees. *See, e.g.*, SAC ¶¶ 1-3, 8-39. Moreover, sending every student home to take classes online is not a mere "modification" or "change," as Defendant suggests in its briefing, *see* Opp. at 8; it is a complete failure to provide students with promised educational experiences for which they bargained and paid. In any event, it would be improper to deny Plaintiffs the opportunity to amend their SAC to state a properly alleged breach of contract claim.[9]

---

[9] A Vermont district court recently refused to enforce a similar provision in a course catalog in *Patel v. University of Vermont and State Agricultural College*, 2021 WL 1049980 (D. Vt. Mar. 15, 2021). *See id.* at *9-11 ("The court will not enforce UVM's reservation of the right to change its educational program to render the contract unenforceable."). Other courts have similarly refused to dismiss cases at the pleadings stage based on a school's purported unilateral right to modify the contract with its students. *See, e.g.*, *Metzner v. Qunnipiac Univ.*, 2021 WL 1146922, at *10, n. 7 (D. Conn. Mar. 25, 2021) ("[T]he Court deems [] questions as to whether the specific terms of the alleged contract permit or preclude Plaintiffs' recovery improper for resolution without further factual development."); *Saroya v. Univ. of the Pacific*, 2020 WL 7013598, at *6 (N.D. Cal. Nov. 27, 2020) (finding that UOP's arguments regarding its "reservation of right to change or modify services … are more appropriate at the dispositive motion stage"); *Bridget McCarthy v. Loyola Marymount Univ.,* No. 220 CV 04668 -SBJ EMX, 2021 WL 268242, at *5 (C.D. Cal. Jan. 8, 2021) (rejecting LMU's right to modify argument and holding that "this shift to online learning is anything but modest—the promise of learning in a dynamic classroom on a bustling and thriving campus full of amenities and planned and spontaneous human encounters is not delivered by looking at a computer screen at home"); *Bergeron v. Rochester Inst. of Tech.,* No. 20-CV-6283 (CJS), 2020 WL 7486682, at *7 (W.D.N.Y. Dec. 18, 2020) ("The Court is not persuaded at this stage by RIT's claim that the so-called disclaimer is dispositive of Plaintiffs' breach of contract claims."); *Omoro et al v.*

7

### B. Whether Defendant's Conduct Was Arbitrary, Capricious, Or In Bad Faith Is Irrelevant To Plaintiffs' Breach Contract Claim

DePaul argues that Plaintiffs' contract claim must fail because it does not allege that Defendant acted arbitrarily, capriciously, or in bad faith. Opp. at 8. However, Defendant's attempt to impose this deferential standard – which Illinois courts apply only to "adverse decision[s] concerning [a] student," usually in the context of *disciplinary* action, *Wilson v. Illinois Benedictine College*, 112 Ill.App.3d 932, 937, 68 (1983) – is (again) improper. Because the SAC does not assert that Defendant made any adverse disciplinary decisions against Plaintiffs, the Court need not show deference to Defendant's decision to close its campuses and suspend in-person instruction. Rather, all that matters is whether Plaintiffs received the in-person education and resources for which they paid and contracted. As the SAC more than adequately alleges, Plaintiffs did not.

## II. PLAINTIFFS' AMENDED UNJUST ENRICHMENT CLAIM IS NOT FUTILE

Plaintiffs' amended unjust enrichment claim is likewise sufficient. DePaul argues that this claim, is futile because the Court previously rejected it. Opp. at 8-9. In previously dismissing Plaintiffs' unjust enrichment claim, the Court explained that it was "not persuaded" by Plaintiffs' contention that an unjust enrichment claim can be plead in the alternative when the *terms* of a contract are in dispute, particularly because Plaintiffs cited only one case in support of this proposition. MTD Order at 10-11. Plaintiffs can now point to ample authority in support of their position. Since the Court issued its MTD ruling, several courts have found that an unjust

---

*Brandeis Univ.*, Case No. 1:20-cv-11021-NMG (D. Mass. Apr. 13, 2021) ("Although Brandeis has reserved the right to make some changes to its course offerings, this Court cannot, at this stage of the litigation, rule as a matter of law that the disclaimer includes the right to convert all in-person courses to an online format."). Likewise, this Court should reject DePaul's argument that it can unilaterally modify its contract with its students at any time.

enrichment claim can survive a motion to dismiss where the parties disagree as to whether a contract for *in-person instruction* existed. *See, e.g.*, *Bergeron,* 2020 WL 7486682, at *9 ("The Court declines to dismiss Plaintiffs' unjust enrichment claims at this juncture, as they have adequately pled the elements of unjust enrichment and – as noted above in the breach of contract discussion – there is a dispute over the existence, scope, or enforceability of the alleged contract in this case."); *In re: University of Miami COVID-19 Tuition and Fee Refund Litigation*, No. 20-22207-CIV, 2021 WL 1251139, at *5-6 (S.D. Fla. Mar. 5, 2021) (denying motion to dismiss both breach of contract and unjust enrichment claims); *Omoro v. Brandeis Univ.*, No. CV 20-11021-NMG, 2021 WL 1408115, at *4 (D. Mass. Apr. 13, 2021) (same); *Metzner,* 2021 WL 1146922, at *10 (rejecting argument that plaintiffs "cannot maintain an unjust enrichment claim when they have pled the existence of an enforceable contract" finding "the Federal Rules of Civil Procedure specifically contemplate and permit a plaintiff to plead in the alternative.").

### III. PLAINTIFFS PROPERLY SEEK RECOVERY OF UNREFUNDED FEES

DePaul's argument that the Court should not allow leave to amend because the Plaintiffs seek the recovery of various fees even though the University agreed to waive certain fees for the Spring 2020 Quarter (Opp. at 9-10) is premature. To be clear, Plaintiffs seek recovery only of fees that Plaintiffs paid that were *not* refunded or waived. *See, e.g.,* SAC ¶¶ 93, 111, 113. The inclusion of these allegations is consistent with Plaintiffs' duty to ensure that Plaintiffs and are made whole.

### CONCLUSION

For the reasons stated herein, Plaintiffs and the Class respectfully request that the Court grant Plaintiffs' Motion for Leave to file a Second Amended Complaint.

| | |
|---|---|
| Dated: April 21, 2020 | Respectfully submitted,<br><br>**BERGER MONTAGUE PC**<br><br>By:   */s/ Richard D. Schwartz*<br>          Richard D. Schwartz<br>Richard D. Schwartz<br>Shanon J. Carson<br>Ellen T. Noteware<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000<br>Fax: (215) 875-4604<br>rschwartz@bm.net<br>scarson@bm.net<br>enoteware@bm.net<br><br>**BERGER MONTAGUE PC**<br>E. Michelle Drake<br>Joseph Hashmall<br>43 SE Main Street, Suite 505<br>Minneapolis, MN  55414<br>Tel: (612) 594-5999<br>Fax: (612) 584-4470<br>emdrake@bm.net<br>jhashmall@bm.net<br><br>**BURSOR & FISHER, P.A.**<br>L. Timothy Fisher<br>Neal J. Deckant<br>1990 North California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700<br>ltfisher@bursor.com<br>ndeckant@bursor.com<br><br>**BURSOR & FISHER, P.A.**<br>Sarah N. Westcot (*pro hac vice* app. forthcoming)<br>701 Brickell Ave, Suite 1420<br>Miami, FL 33131<br>Telephone: (305) 330-5512<br>Facsimile: (305) 676-9006<br>swestcot@bursor.com |

10

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
malmstrom@whafh.com

*Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on the 21st day of April, 2021, the foregoing Plaintiffs' Reply In Support of Their Motion For Leave to File Second Amended Class Action Complaint was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system on all parties of record.

                                                /s/ Richard Schwartz_____
                                                  Richard Schwartz